**PITTSBURGH BUILDERS SUPPLY CO., Plaintiff,**

v.

**WESTMORELAND CONSTRUCTION COMPANY, Marco Interior Systems, Inc.; and United States Fidelity & Guaranty Company, Defendants.**

**Civ. A. No. 88–955.**

United States District Court, W.D. Pennsylvania.

Jan. 4, 1989.

Wm. H. Difenderfer, Pittsburgh, Pa., for plaintiff.

Karen Sirianni, Pittsburgh, Pa., for defendants.

## MEMORANDUM

SMITH, District Judge.

This matter was reassigned to this judge on November 14, 1988. Presently before the Court are defendants Westmoreland Construction Company and United States Fidelity and Guaranty Company's joint Motion for Summary Judgment, filed November 14, 1988, and plaintiff Pittsburgh Builders Supply Company's Counter Motion for Summary Judgment, filed November 28, 1988. Plaintiff seeks to hold either moving defendant, or both of them, liable for payment for supplies it delivered as a materialman on a contract for improvements to the Pennsylvania Air National Guard facilities at the Greater Pittsburgh International Airport. Moving defendants seek dismissal of the claim against them. Defendant Westmoreland, a general contractor and the principal on the payment bond, denies that it is contractually obligated to PBS. Defendant USF & G, a surety company,

denies that it is liable on its payment bond to PBS because PBS failed to make a timely claim under the Miller Act.

In 1985, defendant Westmoreland received a United States government contract to upgrade the Pennsylvania Air National Guard facilities at the Greater Pittsburgh International Airport. On May 30, 1985, Westmoreland executed a payment bond pursuant to the Miller Act, 40 U.S.C. § 270a *et seq.*, with Westmoreland as principal and defendant USF & G as surety. Westmoreland subcontracted with Marco Interior Systems, Inc., to provide some of the construction services on the airport project. Marco, in turn, entered into a contract with PBS to supply construction materials. PBS delivered materials to Marco until early summer, 1987, at which time it refused to supply any more materials due to Marco's large unpaid balance owed to PBS.

On July 5, 1987, Westmoreland terminated its subcontract with Marco, due apparently to its dissatisfaction with Marco's default in its obligations, and thereafter directly undertook work on the portion of the construction that Marco failed to complete. Westmoreland and PBS entered into a contract for the supply of construction materials, which materials were shipped during the period from July 16, 1987, through July 24, 1987, or July 26, 1987. Westmoreland paid PBS for these materials directly.

The parties dispute what occurred during the formation of this Westmoreland—PBS contract. PBS asserts that it received oral assurances from Westmoreland that the outstanding balance owed to it by Marco would be paid by Westmoreland, and that it relied on Westmoreland's assurance in agreeing to supply Westmoreland with materials after Marco's default. Westmoreland denies this.

The parties also dispute the steps PBS took prior to filing this lawsuit under the Miller Act. PBS claims that on September 1, 1987, it sent a letter by regular U.S. Mail to USF & G, with copies to Westmoreland and to Marco, notifying USF & G that it intended to make a claim on USF & G's payment bond in the amount of Marco's

outstanding balance to PBS, of $29,795.35. PBS again sent a letter on October 13, 1987, this time by certified mail, and on October 20, 1987, against making claim on the payment bond. Westmoreland and USF & G deny that any letter was sent to Westmoreland by PBS on September 1, 1987. They assert that the first notice of any claim came to Westmoreland on October 16, 1987, by a copy of PBS's October 13, 1987, letter.

The Miller Act provides, in pertinent part:

Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States ...:

* * * * * *

(2) A payment bond with a surety or sureties ... for the protection of all persons supplying labor and materials in the prosecution of the work provided for in said contract for the use of each such person.

40 U.S.C. § 270a(a). Since a supplier cannot acquire an enforceable lien against public property of the United States, this section provides that a surety guarantee their payment. In order to proceed against the surety, the Act further provides:

Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: **Provided, however,** That any person having direct contractual relationship with a subcontractor but no contractual rela-

tionship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons (sic).

40 U.S.C. Section 270b(a).

To establish a prima facie case, a material supplier must prove four elements:

(1) the materials were supplied in prosecution of the work provided for in the contract;

(2) he has not been paid;

(3) he had a good faith belief that the materials were intended for the specified work; and

(4) the jurisdictional requisites were met.

*United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.,* 750 F.2d 759, 761 (9th Cir.1984) (citations omitted). The defendants and plaintiff dispute only the fourth element, the jurisdictional requirement of timely notice on filing under section 270b(a).

PBS indisputedly filed its suit in a timely fashion, within one year of the last day on which PBS delivered materials. 40 U.S.C. § 270b(b). The defendants assert, however, that the Act's notice provision was not complied with. By their calculation, the date on which PBS last performed labor or supplied material for which this claim is made was June 26, 1987. Defendants' Motion For Summary Judgment, paragraph 9. Their first notice from PBS,

they allege further, was PBS's October 13, 1987, letter. *Id.* Paragraph 23. The ninety-day period for notifying the contractor having expired, no claim could be made against USF & G or Westmoreland under the Miller Act. Further, Westmoreland asserts, since it paid for the materials delivered in July 1987, under a contract without any agreement to reimburse PBS for Marco's debts, no recovery can be had against it in contract. Westmoreland further points out this court's lack of jurisdiction on the contract claim should the Miller Act claim fall.

 The plaintiff asserts that the September 1, 1987, letter, by all calculations within the ninety-day period, was received by Westmoreland and USF & G notwithstanding PBS's failure to send it by registered mail. Plaintiff also asserts that it was unaware that Marco was terminated by Westmoreland, and believed itself to be dealing with Marco and Westmoreland throughout July, 1987. Plaintiff's Counter Motion For Summary Judgment, paragraph 9. Therefore, PBS contends, the ninety-day period should be computed beginning July 24, 1987. Summary judgment cannot be granted, on this state of the record, to defendants.

There can be no dispute that USF & G had actual notice of the claim against the bond within the necessary time period. Plaintiff's Counter Motion For Summary Judgment, Exhibit "C", Paragraph 2. The date on which Westmoreland received notice, and the terms of PBS's contract with Westmoreland are disputed issues of fact. Summary judgment for plaintiff can be granted only if the receipt of actual notice by the surety on a payment bond is sufficient, despite a lack of notice by registered mail to the contractor, to satisfy the notice requirements of the Miller Act.

The limitations period of the Miller Act has always been construed to be mandatory and jurisdictional. However, the requirement of service by registered mail or

the equivalent of service by the United States marshal

> was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received.

*Fleisher Engineering & Construction Company v. United States ex rel. Hallenbeck,* 311 U.S. 15, 19, 61 S.Ct. 81, 83, 85 L.Ed. 12, 15 (1940).

 The September 1, 1987, notice, however, is certain only as to the surety. We find no support in the Miller Act or in cases interpreting it for the proposition that service on the surety is effective to serve the general contractor. There being a genuine dispute of fact over the date of that service, summary judgment for plaintiff must also be denied.[1]

1. Several subsidiary legal claims made by defendants in support of their Motion for Summary Judgment also turn on disputed fact, and therefor summary judgment cannot be granted in part.